IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DENNIS L. FAULK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 2:13cv307-TFM |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION and ORDER

### I.  Procedural History

Plaintiff Dennis L. Faulk ("Faulk") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., alleging that he is unable to work because of a disability.  His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that Faulk was not under a "disability" as defined in the Social Security Act.  The ALJ, therefore, denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

have consented to entry of final judgment by the United States Magistrate Judge.   The

case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3).

Based on the court's review of the record in this case and the parties' briefs, the court

concludes that the Commissioner's decision should be AFFIRMED.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when

the person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to
> result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months . . .

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of
> "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2]

The standard of review of the Commissioner's decision is a limited one.  This

court must find the Commissioner's decision conclusive if it is supported by substantial

---

[2] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986)  is a supplemental security income case (SSI).  The same
sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in
Title XVI cases.  *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).

"Substantial evidence is more than a scintilla, but less than a preponderance.  It is such

relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may

not look only to those parts of the record which supports the decision of the ALJ but

instead must view the record in its entirety and take account of evidence which detracts

from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir.

1986).

> [The court must] . . . scrutinize the record in its entirety to determine the
> reasonableness of the [Commissioner's] . . . factual findings . . . No similar
> presumption of validity attaches to the [Commissioner's] . . . legal
> conclusions, including determination of the proper standards to be applied
> in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

#### A.    Introduction

Faulk was 58 years old at the time of the hearing and has completed the fourth

grade and a job corps program.[3]  (R. 36-37).  He has prior work experience as a chain

saw operator and bulldozer operator.  (R. 39).   Faulk alleges that he became disabled on

November 1, 2009 due to arthritic shoulders, elbows, hands, knees, and feet and left-

shoulder bursitis.  (R. 40-41, 44).  After the hearing on August 23, 2011, the ALJ found

that Faulk suffers from history of osteoarthritis as a severe impairment.  (R. 23, 33).   The

---

[3] The medical records indicate that Faulk completed the ninth grade (R. 208);  Faulk, however, testified that he completed the fourth grade. (R. 36).  For purposes of the Opinion, the court will presume that Faulk attended school through the fourth grade.

ALJ determined that Faulk retains the residual functional capacity to perform medium work except that he should never climb ropes or scaffolding and is able to frequently balance, stoop, kneel, crouch, and crawl. (R. 23). The ALJ concluded that Faulk could return to his past work as a heavy equipment operator. (R. 27). Accordingly, the ALJ concluded that Faulk is not disabled. (*Id*).

### B. The Plaintiff's Claims

Faulk presents the following issues for review:

(1)     The Commissioner's decision should be reversed because the ALJ erred in relying on the opinion of a Single Decision Maker in arriving at her residual functional capacity ("RFC") assessment.

(2)     The Commissioner's decision should be reversed because the ALJ failed to address the whole opinion of Dr. Bendinger, an examining physician.

(Doc. No. 12, Pl's Br. 3).

### IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F. 2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of, and explore all relevant facts to elicit both

favorable and unfavorable facts for review. *Cowart v. Schweiker*, 662 F. 2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in party unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will address Faulk's claims.

First, Faulk asserts that the Commissioner's decision should be reversed because the ALJ relied on the assessment of a Single Decision Maker ("SDM") when determining he has the residual functional capacity to perform medium work.

"SDM's are part of a test program of the Social Security Administration for making initial disability determinations by non-medical experts. 20 C.F.R. § 404.906(a)." *Chaverst v. Astrue*, 2012 WL 5379063 at *8 (N.D. Ala. 2012). "Alabama is one of the states in which these modifications are being tested. 71 Fed.Reg. 45, 890 (August 10, 2006). . . . Under the [SDM] model, a single decision maker will make the disability determination and may also determine if other conditions for entitlement to benefits based on disability are met. Under this plan, a signature from a medical or psychological consultant is not required on disability determination forms. 20 C.F.R. § 404.906." *Id.* at *9 (citation omitted).

When an ALJ independently assesses a claimant's residual functional capacity based on substantial evidence in the record, an ALJ's reliance in part on the opinion of a non-examining SDM is not reversible error.  *See Black v. Colvin*, No. 3:11cv1008-CSC. 2013 WL 1278938, *3 (M.D. Ala. March 27, 2013) (no error where ALJ relied on non-examining SDM's assessment as evidence only insofar as it reported the opinion of a state agency consulting physician);  *Aponte v. Commissioner of Social Sec. Admin.*, No. 6:12cv32-Orl-DAB, 2013 WL 178335, *5 (M.D. Fla. Jan. 17, 2013) ("[I]f substantial evidence other than the opinion of a non-physician supports the determination, the Court must affirm.").

In this case, substantial evidence other than the assessment of the SDM supports the ALJ's determination that Faulk retains the physical residual functional capacity to perform medium work.  The medical records demonstrate that Faulk sought medical treatment for his arthritis and bursitis only twice over a three-year period.  (R. 204-06, 237-37).  On December 2008, Faulk went to the emergency room at Dale Medical Center complaining of elbow pain and swelling after being struck by several pieces of metal.  (R. 204).  An x-ray of the right elbow indicated soft tissue swelling overlying the olecranon with no acute fracture or significant bone or joint abnormality seen. (R. 206). The emergency room physician's clinical impression was right olecranon bursitis.  (R. 203, 205.)  Faulk did not seek medical attention for pain again until May 30, 2011, when he went to the emergency room at Southeast Alabama Medical Center complaining of severe

left shoulder pain which began the previous day and "arthritis everywhere."[4] (R. 236-37). The emergency room physician noted that Faulk's range of motion was limited and that his pain increased with external and internal rotation of the left shoulder. (R. 237). The physician's clinical assessment was left shoulder bursitis. (*Id*). Medical personnel administered an injection of Norflex and Toradol. (R. 238). Upon discharge, the emergency room physician recommended that Faulk take one 500 milligram tablet of Naprosyn twice a day and recommended a follow-up visit with Dr. Ryan Conner, an internist. (R. 229, 237). Thus, the ALJ's determination regarding the lack of routine medical treatment is supported by substantial evidence.

The ALJ also gave considerable weight to the opinion of Dr. Richard L. Bendinger, Jr., a Doctor of Osteopathic Medicine. Specifically, the ALJ found:

> A review of the record references the claimant's consultative evaluation in April 2010 with Richard L. Bendinger, Jr., D.O., to whom he voiced complaints of chronic hand, shoulder, and knee pain. The claimant informed Dr. Bendinger that he took no medication for any problem and had not had any recent emergency room visits or hospitalizations. While examination disclosed some osteoarthritic changes in the hands, crepitance in both knees, and painful range of motion in the hands, knees, and shoulders (as well as loss of range of motion in those extremities), the remainder of the physical examination was normal. For example, the claimant had a normal tandem gait, ability to squat and rise, ability to heel and toe walk, and ability to tandem walk. His grip strength was 5/5, general muscle strength was 5/5, and fine and gross manipulation were negative. Despite the claimant's complaints of hand symptomatology, his dexterity appeared to be good, his hands were well calloused, and he possessed no hand atrophy. The claimant was additionally observed to have excellent muscle tone in both the upper and lower extremities.

---

[4] The medical records also include "disability x-rays" conducted by Dr. William King, an internist, on June 2, 2010. (R. 217). Dr. King noted that x-rays of the left knee show minimal joint space narrowing with no osteophyte formation, dislocation, or fracture; x-rays of the left shoulder show no evidence of any osteoarthritis; and x-rays of the right shoulder show normal joint space and no fracture or dislocation. (R. 217). Nothing in the record indicates that Faulk sought treatment from Dr. King.

According to Dr. Bendinger, the claimant's primary problem appeared to be his shoulders bilaterally. Dr. Bendinger's diagnostic impressions consisted of bilateral shoulder pain secondary to osteoarthritis and/or rotator cuff disease, osteoarthritis in the knees, and osteoarthritis in the hands. Dr. Bendinger opined that the claimant's ability to do work-related activities such as sitting, standing, or walking would be relatively unimpaired and that his lifting, carrying, and handling of objects might be slightly impaired because of his arthritis (especially doing repetitive things like levers). . . .

. . . Regarding the claimant's impairments, the undersigned has assigned considerable weight to the opinions of Dr. Bendinger, in that the conclusions he reached are most accurately reflected by the overall, credible objective evidentiary record. The undersigned finds that Dr. Bendinger's opinions are not inconsistent with the state agency opinions that the claimant possessed the capacity to perform medium work, with the exception that he should never climb ladders, ropes, or scaffolds, must avoid concentrated exposure to vibrations, and must avoid all exposure to hazards, such and machinery and unprotected heights. The undersigned finds no evidence of record supporting a conclusion that the claimant's impairments would be resistant to either alleviation or control with the proper and regular use of the appropriate prescription medications, if taken on a regular and persistent basis. The undersigned notes that the claimant informed Dr. Bendinger that he took no medication for any problem and that emergency room documentation from May 2011 revealed that he was taking no medications. The record reveals, however, that when the claimant used Naprosyn his symptoms were improved and that he felt better. . . .

(R. 26).

Faulk asserts that the ALJ's reliance on Dr. Bendinger's findings when determining he has the residual functional capacity to perform medium work is not supported by substantial evidence because the ALJ failed to consider the consultative physician's opinion in its entirety. Specifically, Faulk argues that the ALJ failed to consider Dr. Bendinger's opinion that he has osteoarthritic changes in his hands; crepitance in both knees; painful range of motion in the hands, knees, and shoulders, and loss of motion in these extremities; and decreased range of motion in the shoulders

consistent with rotator cuff disease.  (Pl's Br., pp. 5-6).  In addition, he argues that Dr. Bendinger's opinion when considered with all of the evidence establishes that he is significantly limited in his ability to perform work activities due to decreased fine and gross manipulation and walking and/or standing limitations.  (*Id.*, p. 11).

An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level. . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.").  *See also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments.").  "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)."  *Peeler v. Astrue*, 400 Fed. Appx. 492, 494 n.2 (11th Cir. 2010).

This court cannot conclude that the ALJ's determination is inconsistent with Dr. Bendinger's opinion.  The medical records demonstrate that, on April 6, 2010, Dr. Bendinger conducted a consultative examination, in which he found:

> [Faulk's] primary problem appears to be in his shoulders bilaterally.  He does have crepitance and pain with range of motion in his knees.  His dexterity appears to be good, although he did complain of not completely closing his hands and making a fist.  He did so in his exam.  His hands were

> also well calloused. He appears to be able to button his clothes, [tie] his shoelaces, pick up small objects, hold a glass, turn a doorknob, etc.

(R. 212). Dr. Bendinger also noted normal range of motion of the spine, elbows, hips, knees, ankles, wrists, and hands, as well as normal grip strength and dexterity. (R. 215). His clinical impression was bilateral shoulder pain secondary to osteoarthritis and/or rotator cuff disease; osteoarthritis of the knees; and osteoarthritis of the hands. (R. 213). The consultative physician further found:

> [T]he patient's ability to do work related activities [and] sitting, standing, or walking would be relatively unimpaired. He has no back problems. Lifting, carrying and handling objects might be slightly impaired because of his arthritis, especially doing repetitive things like levers, that kind of thing, however, his muscle tone was excellent. He did not have any hand atrophy and his hands were well calloused. Hearing, speaking and traveling would be unimpaired.

(R. 212-13).

The ALJ considered Dr. Bendinger's opinion, including his findings regarding osteoarthritic changes, crepitance in both knees, painful range of motion, and the decreased range of motion of Faulk's shoulders and other extremities when determining Faulk is able to perform medium work with limitations. Faulk's argument that the ALJ failed to provide his reasons for dismissing parts of Dr. Bendinger's opinion regarding decreased fine and gross manipulation and walking and standing limitations is unavailing. A review of the record indicates that Dr. Bendinger found that sitting, standing, and/or walking would be relatively unimpaired, that lifting, carrying, and handling objects would be slightly impaired, and that Faulk had no hand atrophy. (R. 212-13). Thus, the ALJ's findings are consistent with Dr. Bendinger's opinion.

Furthermore, the court cannot conclude that the ALJ's omission of Dr. Bendinger's specific findings establishes that the ALJ's determination that Faulk has the residual functional capacity to perform medium work is not supported by substantial evidence. "'An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'"  *Ward v. Astrue*, No. 1:11cv147-TFM, 2012 WL 607642, *9 (M.D. Ala. 2012) (quoting *McCray v. Massanari*, 175 F.Supp.2d 1329, 1336 (M.D. Ala. 2001)).

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's findings.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  The ALJ evaluated all the evidence before her which led her to conclude that Faulk can return to his past work as a heavy equipment operator.  It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  Instead the court reviews the record to determine if the decision reached is supported by substantial evidence.   *Moore v. Barnhart*, 405 F.3d 108, 1211 (11th Cir. 2005). Substantial evidence "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  Given this standard of review, the court concludes that the ALJ's residual functional capacity assessment is consistent with the medical evidence as a whole.   After a careful examination of the administrative record, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Faulk's residual functional capacity to perform medium work.

## V.    Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence.  Accordingly, it is

ORDERED that the decision of the Commissioner be and is hereby AFFIRMED.

Done this 24th day of February, 2014.

                    /s/Terry F. Moorer
                TERRY F. MOORER
                UNITED STATES MAGISTRATE JUDGE